UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

SANTO A. CASTILLO-MARTINEZ,
a/k/a/ "Raymond A. Reyes,"
a/k/a "Pelo de Caña,"
a/k/a "Dennis," et al.,

Defendants.

REPORT & RECOMMENDATION

04-CR-6128L

By Order of Hon. David G. Larimer, United States District Judge, dated October 29, 2004, all pretrial matters in the above captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 10).

## FACTUAL BACKGROUND

This prosecution is the result of an investigation into an alleged conspiracy to transport kilogram quantities of cocaine from, among other locations, Atlanta, Georgia to Rochester, New York, to distribute and sell that cocaine and to launder the proceeds from those activities. A Report and Recommendation has already been issued by this Court relating to motions filed by defendants Frank Rijo, Maria Carpio and Geraldo Ortiz (Docket # 279) and has been adopted by the district court. (Docket # 297). This Report and Recommendation addresses pretrial motions filed by co-defendant Santo Castillo-Martinez.

Castillo-Martinez is charged in five counts of a six-count superseding indictment. (Docket # 295). The first count charges that from 1994 until the date of the Indictment, Castillo-Martinez and his co-defendants conspired to possess with intent to distribute and to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Castillo-Martinez and co-defendant Victorino Hernandez are charged in the second count with possessing with intent to distribute five kilograms or more of cocaine on June 8, 2002, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. The fourth count charges that on November 15, 2003, Castillo-Martinez and co-defendant Henry Castillo-Valdez possessed with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Counts Five and Six both charge money laundering offenses against Castillo-Martinez and various other defendants, in violation of 18 U.S.C. § 1956(h). The Superseding Indictment also includes forfeiture allegations against Castillo-Martinez related to Counts One, Five and Six. (Docket # 295).

Before this Court for Report and Recommendation is Castillo-Martinez's motion to suppress communications intercepted over two court-authorized wiretaps. (Docket # 314).[1]

**DISCUSSION**

During the investigation of this case, the government applied for and obtained multiple wiretap warrants. Castillo-Martinez moves to suppress the government's use of

[1] Castillo-Martinez's omnibus motions also sought an audibility hearing, discovery and inspection, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, preservation of rough notes, *Brady* material, *Jencks* material, a bill of particulars and joinder of motions made by co-defendants. (Docket # 314). Each of these requests was either resolved by the parties or decided in open court by the undersigned on January 16, 2007. (Docket ## 326, 327).

statements made by him and intercepted pursuant to two of those eavesdropping warrants. The warrants in question were issued in the Northern District of Georgia for cellular telephone number (404) 784-2708 (referred to herein as "Line #5") and cellular telephone number (281) 772-1940 (referred to herein as "Line #6"). Castillo-Martinez contends that suppression of all communications intercepted over those lines is warranted because (1) the wiretap warrants were unsupported by probable cause; (2) law enforcement failed to properly minimize certain conversations; and (3) law enforcement failed to exhaust other normal investigative techniques before resorting to the use of wiretaps. (Docket # 314).

**A. <u>Probable Cause</u>:** With remarkable lack of specificity, Castillo-Martinez argues that "there was not probable cause for the issuance of [the] eavesdropping warrants in that the confidential informant sources of information used in the application were inherently unreliable and suspect." (Docket # 314 at ¶ 35). I agree with the government that the affidavits adequately demonstrated probable cause to justify the issuance of the warrants.

Pursuant to 18 U.S.C. § 2518(3), before issuing a wiretap order, a judge must determine:

> [1] that there is probable cause to believe that a crime has been, is being, or is about to be committed; [2] probable cause to believe that communications about the crime will be obtained through the wiretap; [3] that alternative means have been tried and failed or appear too dangerous or unlikely to succeed; and [4] probable cause that the premises to be wiretapped are being used for criminal purposes or are used or owned by the target of the wiretap.

*United States v. Wagner*, 989 F.2d 69, 71 (2d Cir. 1993).

The probable cause standard applicable to wiretaps is the same as that required for a traditional search warrant. *Id.* (citing *United States v. Rowell*, 903 F.2d 899, 901-02 (2d Cir.

1990); *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977), *cert. denied*, 436 U.S. 931 (1978)). Pursuant to the Supreme Court's holding in *Illinois v. Gates*, probable cause must be determined by evaluating the "totality of the circumstances." 462 U.S. 213, 238 (1983). As a reviewing court, however, this Court must accord "substantial deference" to the issuing court's finding of probable cause. *United States v. Wagner*, 989 F.2d at 72 (citations omitted).

As previously noted, this case is the culmination of a lengthy and expansive investigation into narcotics activities occurring in, among other places, Atlanta, Georgia and Rochester, New York. The investigation involved the use of many confidential informants and several federal warrants, including eavesdropping warrants. The warrants challenged here were the fifth and sixth eavesdropping warrants issued in the course of the investigation. Two of the prior warrants were the subject of a motion to suppress by Castillo-Martinez's co-defendant Frank Rijo and were analyzed in this Court's prior Report and Recommendation. (Docket # 279).

The subject warrants were issued upon supporting affidavits of Deputy Sheriff D.G. Noe of the Clayton County Sheriff's Office, who was also deputized as an agent of the Drug Enforcement Administration at the time he submitted his affidavits. (Docket ## 320-2 ("Noe Aff.-1"); 320-3 ("Noe Aff.-2")) I have reviewed those affidavits and find that they sufficiently allege probable cause to believe that evidence of cocaine trafficking would be discovered through the interception of communications over the identified telephone lines.

Each affidavit describes in detail the progress and results of the investigation at the time the applications were made. They summarize with particularity information provided by several confidential informants, and corroborated by various independent investigative means,

about a marijuana and cocaine distribution organization led by Noe Lopez, including information about Louis Shangville Johnson, who is identified as one of the organization's largest distributors. (Noe Aff.-1 at ¶¶ 9-24; Noe Aff.-2 at ¶¶ 9-29). With regard to Line #5 specifically, Noe's affidavit recounts a recorded meeting between a confidential informant identified as "CS3" and Johnson, during which they discussed an expected delivery of a large quantity of marijuana. During the conversation, Johnson advised CS3 that he had a new cellular telephone number through which he could be reached, (404) 784-2708 (Line #5). Later that day, CS3 attempted to contact Johnson by calling the Line #5 telephone. Although Johnson did not answer, he immediately contacted CS3 using another telephone, and they discussed the anticipated arrival. (Noe Aff.-1 at ¶ 30). Noe's affidavit also discloses that a review of the telephone records for Line #5 revealed that it had been used to call several telephone numbers used by other members of the narcotics conspiracy. (Noe Aff.-1 at ¶¶ 30-35). Noe further affirmed that he believed Johnson was using the Line #5 cellular telephone to retrieve voice-mail messages left on one of the other target telephones. (Noe Aff.-1 at ¶ 30).

According to Noe's affidavit, CS3 began supplying information to law enforcement about the narcotics organization several months earlier. Noe reported that CS3 had no prior criminal convictions and had begun providing information after being approached by law enforcement. The information provided by CS3 had led to, among other things, the seizure of approximately 550 pounds of marijuana. Noe further disclosed that during their initial interview of CS3, one-half an ounce of marijuana was recovered from the informant's vehicle, along with several papers from his or her residence that reflected notations apparently related to narcotics activities. CS3's motive to cooperate, according to Noe, was a desire to get "out of the

business" and to minimize any criminal exposure he or she faced. Noe further affirmed that much of CS3's information had been independently corroborated by other sources. (Noe Aff.-1 at ¶ 25; Noe Aff.-2 at ¶ 15).

Approximately one month after the wiretap warrant was issued for Line #5, authorization was sought to continue the interception of communications over that line, as well as to intercept communications over telephone number (281) 772-1940 (Line #6). Deputy Sheriff Noe again submitted an affidavit in support of the application. (Noe Aff.-2). In this second affidavit, Noe detailed, *inter alia*, numerous narcotics-related conversations intercepted over Line #5. (Noe Aff.-2 at ¶¶ 21-29). Noe affirmed that he believed Johnson had begun utilizing Line #6, a cellular telephone subscribed to "Angelie Mbidah," to conduct narcotics activity. (Noe Aff.-2 at ¶¶ 30, 33, 35-36). Among other things, he explained that numerous calls were made from Line #6 to check voice-mail messages left on the Line #1 cellular telephone (a phone utilized by Johnson) and that toll records revealed that many of the telephone numbers called by Line #1 also had been called by Line #6. In addition, many of the telephone lines involved in the narcotics-related conversations intercepted over Line #5 also had communicated with Line #6. (Noe Aff.-2 at ¶¶ 30-36).

On this record, I conclude that the issuing courts properly determined that probable cause existed to believe that evidence of cocaine trafficking would be revealed by intercepting communications over Lines #5 and #6. Moreover, no evidence has been presented to suggest that the law enforcement officers participating in the wiretap interceptions did not rely in good faith on the validity of the wiretap warrant. *See United States v. Leon*, 468 U.S. 897 (1984); *see also United States v. Bellomo*, 954 F. Supp. 630, 638 (S.D.N.Y. 1997) (collecting

cases applying *Leon's* good faith exception to evidence seized pursuant to an electronic wiretap warrant). Under *United States v. Leon*, a court will not suppress evidence obtained pursuant to a warrant issued without probable cause unless (1) the issuing magistrate was knowingly misled; (2) the issuing magistrate wholly abandoned his or her judicial role; (3) the application was so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) the warrant was so facially deficient that reliance upon it is unreasonable. *United States v. Leon*, 468 U.S. at 923; *see also United States v. Moore*, 968 F.2d 216, 222 (2d Cir.), *cert. denied*, 506 U.S. 980 (1992). No proof has been offered to suggest that any of these four exceptions apply here. Accordingly, I recommend denial of Castillo-Martinez's motion to suppress communications intercepted over Lines #5 and #6 on the grounds that the warrants for those lines were unsupported by probable.

**B. Failure to Minimize:** Castillo-Martinez further argues that the government failed to properly minimize calls intercepted over Lines #5 and #6 as required by 18 U.S.C. § 2518(5). (Docket # 314 at ¶ 36). The government opposes Castillo-Martinez's motion, arguing that he lacks standing to make a minimization challenge. (Docket # 320 at 15).

Section 2518(5) of Title 18 provides that authorized interceptions "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). Moreover, as the Supreme Court has recognized:

> During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter. Interception of those same type of calls might be unreasonable later on, however, once the nonpertinent categories have been established and it is clear that this particular conversation is of that type.

*Scott v. United States*, 436 U.S. 128, 141 (1978).

Standing to challenge improper minimization requires the showing of a direct privacy interest. *Fury*, 554 F.2d at 526; *United States v. Burford*, 755 F. Supp. 607, 613 (S.D.N.Y. 1991) ("It is well settled law in this Circuit that to have standing to challenge improper minimization during a wiretap executed by the government, that a defendant must show a direct privacy interest"). To establish a direct privacy interest, a defendant must demonstrate a possessory or proprietary interest in the home in which the telephone is located or in the telephone itself. *Fury*, 554 F.2d at 526; *United States v. Villegas*, 1993 WL 535013, *8 (S.D.N.Y. 1993); United *States v. Burford*, 755 F. Supp. at 613 (citing *United States v. Hinton*, 543 F.2d 1002, 1011-12 (2d Cir.), *cert. denied*, 429 U.S. 980 (1976)). Moreover, as noted by the Second Circuit, even defendants who are named as targets of the investigation may lack standing to challenge law enforcement's minimization techniques if they did not have an expectation of privacy in the residence in which the tapped telephone was located. *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir.), *cert. denied*, 502 U.S. 938 (1991); *see also United States v. Poeta*, 455 F.2d 117, 122 (2d Cir.) (finding defendant lacked standing to raise minimization challenge concerning wiretap of co-defendant's telephone), *cert. denied*, 406 U.S. 948 (1972); *United States v. Villegas*, 1993 WL 535013 at *8 (defendant lacked standing to challenge improper minimization of co-defendant's cellular telephone).

In the case at bar, the warrant applications for cellular Lines #5 and #6 identified as targets several individuals believed to be involved in the narcotics distribution conspiracy, one of whom was Castillo-Martinez (identified through his alleged alias, Raymond Reyes). Neither line, however, was registered or believed to be utilized by Castillo-Martinez. The Line #5

cellular telephone was registered only to an International Mobile Subscriber Identifier and did not have a subscriber name or address listed. The Line #6 cellular telephone was registered to Angeline Mbidah in Atlanta, Georgia. Deputy Sheriff Noe affirmed that both telephones were believed to be utilized by Johnson. (Noe Aff.-1 at ¶ 4; Noe Aff.-2 at ¶ 4). Moreover, Castillo-Martinez has not submitted an affidavit to establish that he had any expectation of privacy in either line. On this record, I find that Castillo-Martinez has failed to demonstrate a privacy interest in either of the tapped telephone lines and thus lacks standing to challenge the government's minimization of calls intercepted over those lines.

Even if this Court were to consider the merits of Castillo-Martinez's motion, he has failed to demonstrate a violation of the government's minimization obligations. In its entirety, his argument is that, "Upon information and belief, the interception of electronic communications was not minimized and particularized such as to comply with the requirements of federal law governing the interception of electronic communications." (Docket # 314 at ¶ 36). Castillo-Martinez has failed to identify any particular conversations that he believes should have been minimized and were not. Thus, Castillo-Martinez's motion to suppress intercepted conversations based upon improper minimization should be denied.

**C. Failure to Utilize Traditional Investigative Techniques:** In his final challenge, Castillo-Martinez seeks suppression of the intercepted communications on the grounds that the supporting affidavits offered by Deputy Sheriff Noe failed to demonstrate that before resorting to the wiretaps, traditional investigative procedures had been attempted and had proved unsuccessful. Specifically, Castillo-Martinez argues that law enforcement had been successful in obtaining evidence through traditional means, particularly through the use of

confidential informants. Thus, according to Castillo-Martinez, Noe's affidavits failed to justify the need for wiretap interception. (Docket # 314 at ¶¶ 37-39).

An application for wiretap authorization must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). A judge may approve a wiretap application only after determining that such a showing has been made. 18 U.S.C. § 2518(3)(c). The intent of the requirement, however,

> is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, [it] only require[s] that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.

*United States v. Torres*, 901 F.2d 205, 231 (2d Cir.), *cert. denied*, 498 U.S. 906 (1990). *See also United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974) (18 U.S.C. § 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime"); *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir. 1974), *cert. denied*, 421 U.S. 909 (1975) (intent of 18 U.S.C. § 2518(1)(c) is "not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques"); *United States v. Valdez*, 1991 WL 41590, *2 (S.D.N.Y.) (the "other investigative procedures" requirement is not intended to turn electronic surveillance "into a tool of last resort"), *aff'd*, 952 F.2d 394 (2d Cir. 1991).

In narcotics conspiracy investigations, the requirement may be satisfied by "describing how traditional investigative techniques had failed to provide more than a 'limited picture' of . . . [the] narcotics organization." *United States v. Valdez*, 1991 WL 41590 at *2 (quoting *United States v. Torres*, 901 F.2d at 232). Moreover, wiretaps are particularly appropriate when "the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir. 1987) (internal quotation omitted).

This Court's review of the issuing court's determination is not *de novo*; rather, it is the reviewing court's role "'to decide if the facts set forth in the application were minimally adequate to support the determination that was made.'" *Torres*, 901 F.2d at 231 (quoting *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960 (1977)); *see also United States v. Miranda*, 1993 WL 410507, *2 (S.D.N.Y. 1993) (issuing court's determination concerning sufficiency of normal investigative techniques is entitled to "substantial deference"). Applying this standard to the instant case, this Court finds that Noe's affidavits adequately identified the traditional investigative techniques that had been used and explained why the use of other traditional techniques reasonably appeared unlikely to succeed if used.

In both of his affidavits, Noe affirmed that he believed the wiretap warrants were "essential to ultimately dismantling the cocaine and marijuana trafficking and money laundering organizations." (Noe Aff.-1 at ¶ 51; Noe Aff.-2 at ¶ 42). Noe further affirmed that despite his investigative efforts, he had been unable to determine the full scope of that organization's activities, including the identification of all individuals involved in receiving, storing and

transporting the narcotics. (Noe Aff.-1 at ¶ 51; Noe Aff.-2 at ¶ 42). Specifically, Noe described the traditional investigative techniques that either had been utilized and proved unsuccessful in furthering the goals of the investigation or had not been utilized because they were not likely to succeed. (Noe Aff.-1 at ¶ 52; Noe Aff.-2 at ¶ 43).

For example, both affidavits described assistance provided by three different confidential informants; CS1, CS2 and CS3. According to Noe, at the time of the applications, however, none of the informants was in a position to conduct narcotics purchases with Johnson, the individual believed to be using the Line #5 and #6 cellular telephones, or to provide current information about the organization's activities. (Noe Aff.-1 at ¶ 52a; Noe Aff.-2 at ¶ 43a). As Noe explained, CS1 was no longer being utilized as an informant as to the target organization because investigating agents had concluded that members of the organization suspected that CS1 was cooperating with law enforcement. Similarly, CS3's usefulness was minimized by the apparent reluctance of certain members of the organization to confide in him or her following law enforcement's seizure of a shipment of narcotics that had been the subject of earlier conversations between CS3 and members of the organization. CS2, by contrast, had apparently ceased communicating with law enforcement. (*Id.*)

Noe's affidavits also adequately explained, among other things, the likely ineffectiveness of other investigative techniques in achieving the goals of the investigation. For example, he explained the likely ineffectiveness of grand jury subpoenas to further the investigation's goals. (Noe Aff.-1 at ¶ 52b; Noe Aff.-2 at ¶ 43b). With respect to search warrants, Noe affirmed that their use was not likely to accomplish the investigative goals because they would not reveal the scope of the organization, but might reveal the existence of the

investigation. (Noe Aff.-1 at ¶ 52c; Noe Aff.-2 at ¶ 43c). Noe also explained the limitation of covert physical surveillance, indicating that several members of the narcotics organization had become aware of surveillance teams and had employed counter-surveillance measures. (Noe Aff.-1 at ¶ 52e; Noe Aff.-2 at ¶ 43e).

In sum, this Court finds that Noe's affidavits sufficiently identified the traditional investigative techniques that had been utilized and adequately informed the issuing courts of the reasons why other techniques were unlikely to achieve the aims of the investigation. I find that the factual recitations set forth in those affidavits were adequate to support the issuing judge's wiretap orders. *See Torres*, 901 F.2d at 231. Castillo-Martinez's motion to suppress the wiretap communications based upon the failure to demonstrate the futility of other investigative techniques should therefore be denied.

## CONCLUSION

For the foregoing reasons, it is my recommendation that Castillo-Martinez's motions to suppress wiretap communications **(Docket # 314)** be **DENIED**.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
February 15, 2007

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
February 15, 2007

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).